UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROGER RANDOLPH, | Case No. 2:18-cv-00449-RFB-VCF |
| Petitioner, | **Order Granting in Part and Denying in Part Motion to Dismiss** |
| v. | |
| RENEE BAKER, et al., | (ECF No. 62) |
| Respondents. | |

Roger Randolph has filed a 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his first-degree murder conviction on numerous bases, including insufficiency of the evidence and prosecutorial misconduct. (ECF No. 24.) The court grants the motion in part, dismissing ground 7.

**I.    Background**

In February 2012, a jury convicted Randolph of first-degree murder with use of a deadly weapon, and discharging a weapon where a person might be endangered. (Exh. 165.)[1] Before trial, the State filed a notice of intent to seek the death penalty. (See ECF No. 24 at 2.) The state district court held a hearing pursuant to Atkins v. Virginia, 536 U.S. 304 (2002),[2] and declined to strike the death notice. (Exh. 65.) The state district court sentenced him to 20 years to life for the murder, with a consecutive term of 60 to 192 months for the deadly weapon enhancement, and 12 months for the discharging a

---

[1] Exhibits referenced in this order are found at ECF Nos. 41-54.
[2] Atkins held that execution of mentally retarded criminals violates the Eighth Amendment's prohibition of cruel and unusual punishment. 536 U.S. at 321.

1

weapon count to run concurrently. (Exh. 169.) Judgment of conviction was entered on May 11, 2012. (Exh. 170.)

The Nevada Supreme Court affirmed his convictions in January 2015, and the Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition in June 2017. (Exhs. 194, 235.) Randolph dispatched his federal petition for mailing about March 2018. (ECF No. 8.) This court granted his motion for counsel and appointed the Federal Public Defender ("FPD") to represent him. Randolph filed a counseled, second-amended petition in April 2019. (ECF No. 24.) Respondents now move to dismiss several claims as untimely, unexhausted, procedurally defaulted, or not cognizable on federal habeas review.

## II. Legal Standards & Analysis
### a. Timeliness and Relation Back

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). A new claim in an amended petition that is filed after the expiration of the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. Mayle v. Felix, 545 U.S. 644 (2005). In Mayle, the United States Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655–64. Rather, under the construction of the rule approved in Mayle, Rule 15(c) permits relation back of habeas

claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely.  545 U.S. at 659 and n.5; see also Ha Van Nguyen v. Curry, 736 F.3d 1287, 1297 (9th Cir. 2013).

The parties do not dispute that the original petition was timely filed, that the AEDPA statute of limitations expired before Randolph filed his first-amended petition, and that, therefore, claims in the second-amended petition must relate back to the original petition in order to be timely (See ECF Nos. 62, 68.)

As explained below, Randolph's original pro se petition set forth broad claims and specifically referred to more than 150 pages of the state-court record that he attached. (ECF No. 8.) In Ross v. Williams, the Ninth Circuit Court of Appeals held that "[i]f a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back." 950 F.3d 1160, 1167 (2020). "An amended petition relates back if it asserts one or more claims that arise out of 'the conduct, transaction, or occurrence' that the original petition 'set out' or 'attempted to . . . set out'—in other words, if the two petitions rely on a common core of operative facts." Id. (quoting Fed. R. Civ. P. 15(c)(1)(B); Mayle, 545 U.S. at 657, 664). "'For all purposes,' including relation back, the original petition consists of the petition itself and any 'written instruments' that are exhibits to the petition." Id. (quoting

3

Fed. R. Civ. P. 10(c) (internal brackets omitted)). "Like a brief, a court decision is a written instrument." Id. (citing Dye v. Hofbauer, 546 U.S. 1, 4 (2005)).

This court must "follow two steps to determine whether an amended petition relates back to an original petition that relied on an appended written instrument to help set forth the facts on which it based its claims." Id. First, this court must "determine what claims the amended petition alleges and what core facts underlie those claims." Id. And "[s]econd, for each claim in the amended petition," this court must "look to the body of the original petition and its exhibits to see whether the original petition 'set out' or 'attempted to . . . set out' a corresponding factual episode . . . or whether the claim is instead 'supported by facts that differ in both time and type from those the original pleading set forth." Id. (quoting Fed. R. Civ. P. 15(c)(1)(B); Mayle, 545 U.S. at 650, 664). "The central question under this framework is whether the amended and original petitions share a common core of operative facts, as those facts are laid out in the amended petition and 'attempted to be set out' in the original petition." Id. at 1168. "Relation back may be appropriate if the later pleading merely corrects technical deficiencies or expands or modifies the facts alleged in the earlier pleading, restates the original claim with greater particularity, or amplifies the details of the transaction alleged in the preceding pleading." Id. (internal brackets, quotation marks, and citation omitted). This court is "obligated to 'liberally construe[ ]' documents filed pro se, like Ross's original petition." Id. at 1173 n.19.

1. **Randolph's pro se original petition**

Randolph's original, pro se petition set forth three broad grounds for relief, and he attached more than 150 pages of his state-court proceedings. (ECF No. 8.) In ground 1 he asserts violations of his Sixth and Fourteenth Amendment rights to self-representation. (Id. at 3.) In ground 2 he alleges Fifth, Sixth, and Fourteenth Amendment violations of his right to effective assistance of counsel and refers to his direct appeal. (Id. at 51.) In ground three he asserts violations of his Sixth and Fourteenth Amendment rights to trial counsel, stating "the attorney the court appointed was ineffective to me and my case." (Id. at 152.) He specifically references attachments - "See Att" – and includes more than 150 pages of attachments. He includes his direct appeal (id. at 80-150), the order affirming his convictions on direct appeal (id. at 52-67), his original, pro se state postconviction petition (id. at 31-37), his counseled, supplemental state postconviction petition (id. at 4-17), the state district court order denying his state petition (id. at 45-49), his appeal from the denial of his state postconviction petition (id. at 18-30), and his petition for en banc reconsideration (id. at 68-79).

2. **Randolph's counseled second-amended petition**

The second-amended petition sets forth ten grounds for relief:

**Ground 1**: The trial court deprived Randolph of his Sixth Amendment right to counsel when it did not appoint new counsel even though Randolph's counsel was conflicted (ECF No. 24 at 4-8);

**Ground 2**: Randolph was denied his Sixth and Fourteenth Amendment rights to self-representation (id. at 8-9);

**Ground 3**: Randolph was denied the right to choose whether to concede guilt at trial in violation of the objective of the Sixth Amendment (id. at 10-12);

**Ground 4**: Insufficient evidence supported the conviction in violation of the Fifth, Sixth, and Fourteenth Amendments (id. at 12-14);

5

**Ground 5**: The trial court denied Randolph the opportunity to present his defense when it refused his proposed jury instruction in violation of his Fifth, Sixth, and Fourteenth Amendment due process rights (id. at 14-16);

**Ground 6**: Randolph was denied his right to confrontation in violation of his Fifth, Sixth, and Fourteenth Amendment rights (id. at 16-17);

**Ground 7**: The trial court violated his Eighth Amendment right to be free from cruel and unusual punishment when it failed to strike the death notice (id. at 17-20);

**Ground 8**: The State committed prosecutorial misconduct in violation of Randolph's Fifth, Sixth, and Fourteenth due process and fair trial rights (id. at 20-21);

**Ground 9**: Randolph was denied the right to have a jury venire selected from a fair cross-section of society in violation of his Fifth, Sixth, and Fourteenth Amendment rights (id. at 21-23);

**Ground 10**: The cumulative effect of trial errors violated his Fifth, Sixth, and Fourteenth Amendment rights (id. at 23-24.)

3. **Randolph's claims are timely because they relate back to the pro se original petition and attachments**

Respondents argue that all ten claims are untimely. (ECF No. 62.) However, they also concede that ground 2 of the second-amended petition, the claim that Randolph was denied his right to self-representation, may relate back to ground 1 of the original petition. Ground 1 of the original petition is also the claim that he was denied his right to self-representation. Ground 2 clearly relates back and is timely. (Compare ECF No. 24 at 8-9 with ECF No. 8 at 51, 60-67.)[3]

With respect to the other 9 grounds, while Randolph states he received ineffective assistance of counsel, he includes and refers to his claims on direct appeal and the order

---

[3] Respondents further back off from their position that no grounds relate back in their reply in support of the motion to dismiss, acknowledging that this court may deem grounds 4, 5, 6, 7, and 8 to relate back.

6

affirming his convictions. The court concludes that the facts of all 9 grounds were presented on direct appeal. The relation back inquiry focuses on a common core of operative facts, not the legal theory tied to the claim. Here, the common core of operative facts are the underlying substantive claims, which Randolph attempted to set out in his—admittedly sparse—original petition by attaching and referring to his direct appeal proceedings. Below, the court sets out the claim in the second-amended petition and where the core facts of the claim are set out in the attachments to the pro se original petition:

- Ground 1 (ECF No. 24 at 4-8); Pro se petition (ECF No. 8 at 128-135)
- Ground 3 (ECF No. 24 at 10-12); Pro se petition (ECF No. 8 at 135-136)
- Ground 4 (ECF No. 24 at 12-14); Pro se petition (ECF No. 8 at 101-110)
- Ground 5 (ECF No. 24 at 14-16); Pro se petition (ECF No. 8 at 110-113)
- Ground 6 (ECF No. 24 at 16-17); Pro se petition (ECF No. 8 at 113-118)
- Ground 7 (ECF No. 24 at 17-20); Pro se petition (ECF No. 8 at 119-128)
- Ground 8 (ECF No. 24 at 20-21); Pro se petition (ECF No. 8 at 136-139)
- Ground 9 (ECF No. 24 at 21-23); Pro se petition (ECF No. 8 at 139-146)
- Ground 10 (ECF No. 24 at 23-24); Pro se petition (ECF No. 8 at 147)

The ten grounds in the second-amended petition relate back and are timely.

### b. Exhaustion

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. Rose v. Lundy, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999); see also Duncan v.

Henry, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. See Casey v. Moore, 386 F.3d 896, 916 (9th Cir. 2004); Garrison v. McCarthey, 653 F.2d 374, 376 (9th Cir. 1981). "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999). However, citation to state case law that applies federal constitutional principles will suffice. Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

**Grounds 1, 5, 9, and 10 in the second-amended petition are exhausted**

**Ground 1**

Randolph alleges the trial court deprived him of his Sixth Amendment right to counsel when it did not appoint new counsel even though Randolph's counsel was conflicted. (ECF No. 24 at 4-8). He presented this claim on direct appeal. (See Exh. 187 at 60-67; Exh. 193 at 11-12.) Ground 1 is exhausted.

**Ground 5**

Randolph asserts that the trial court denied him the opportunity to present his defense when it refused his proposed jury instruction in violation of his Fifth, Sixth, and Fourteenth Amendment due process rights. (ECF No. 24 at 14-16). Respondents argue that Randolph did not federalize this claim when he raised it on direct appeal. (ECF No. 62.) On direct appeal, Randolph raised this claim. (Exh. 187 at 42-45.) He stated that "due process forms the foundation for a defendant's right to jury instructions on his or her theory of defense." (Id. at 44.) He cited to a case that stated that a defendant has a federal due process right to theory-of-defense instructions. (See id.) This was sufficient to alert the Nevada appellate court to the federal nature of the claim. Peterson, 319 F.3d at 1158. Ground 5 is exhausted.

**Ground 9**

8

Randolph contends that he was denied the right to have a jury venire selected from a fair cross-section of society in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 24 at 21-23). Respondents complain that when Randolph raised this claim on direct appeal (Exh. 187 at 71-78), he invoked Clark County census data, while federal ground 9 cites to Las Vegas census data. (Compare ECF No. 24 at 22 with Exh. 187 at 75.) The data is close and both sets make the same relative point about the percentages of white, Hispanic, Black, and Asian residents. The court concludes that ground 9 is exhausted.

**Ground 10**

Randolph contends that the cumulative effect of trial errors violated his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 24 at 23-24.) Respondents insist that the cumulative error claim on direct appeal was not federalized. This court disagrees. Randolph cited cases that clearly reference federal due process and fair trial rights. (See Exh. 187 at 79.) Ground 10 is deemed exhausted.

### c. Procedural Default

"Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts, but the state courts disposed of the claim on procedural grounds, instead of on the merits. Coleman v. Thompson, 501 U.S. 722, 730-31 (1991). A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. Id.

The Coleman Court explained the effect of a procedural default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. See Koerner v. Grigas, 328 F.3d 1039, 1046 (9th Cir. 2003).

To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. Murray, 477 U.S. at 488 (emphasis added). For cause to exist, the external impediment must have prevented the petitioner from raising the claim. See McCleskey v. Zant, 499 U.S. 467, 497 (1991).

**The court defers a decision on whether ground 3 is procedurally defaulted**

Randolph argues that he was denied the right to choose whether to concede guilt at trial in violation of the objective of the Sixth Amendment. (ECF No. 24 at 10-12.) Randolph raised a similar claim on direct appeal. (Exh. 187 at 67-68.) Randolph moved for a stay in this court in order to return to state court to raise the claim in the context of the 2018 Supreme Court decision in McCoy v. Louisiana, 138 S.Ct. 1500 (2018). The court granted the motion. (ECF No. 29.)

Respondents argue that ground 3 is procedurally defaulted because the Nevada Supreme Court denied the claim as untimely and successive based upon the Nevada procedural default rules: Nev. Rev. Stat. §§ 34.726(1) and 34.810(1)(a). The court rejected Randolph's argument that McCoy provided good cause. Nevada Supreme Court Case No. 79362, Order of Affirmance. The court distinguished McCoy because that case involved an attorney conceding his client's guilt over the client's clear objection, but with Randolph the court had canvassed him, and he indicated that he agreed with the strategy of admitting he was the shooter. Id. Because the court concluded that McCoy was distinguishable, it did not need to resolve whether it applied retroactively. The court held that Randolph did not show that McCoy provided good cause, and the state district court had properly applied the mandatory procedural bars. Id.

The Ninth Circuit Court of Appeals has held that, at least in non-capital cases, application of the procedural bars at issue in this case – NRS 34.726(1) and 34.810(1)(a) – are independent and adequate state grounds. Therefore, the Nevada Supreme Court's determination that federal ground 3 was procedurally barred under NRS 34.726(1) and 34.810 were independent and adequate grounds to affirm the denial of the claim in the state petition.

In McCoy, the Court held an attorney may not concede a defendant's guilt where the defendant expressly objects or insists on maintaining his or her innocence and that the error was structural. 138 S. Ct. at 1509, 1512. McCoy differentiated a defendant who opposed counsel's concession from a defendant who "'was generally unresponsive during discussions of trial strategy, and 'never verbally approved or protested'" the concession. Id. (quoting Florida v. Nixon, 543 U.S. 175, 181 (2004)).

Randolph urges that this court's procedural default determination turns on whether it agrees with the Nevada Supreme Court's analysis of McCoy, and therefore, he asks the court to defer a ruling on the question to the merits stage. (ECF No. 68 at 24-26.) The court agrees that this course best serves judicial efficiency. A decision on whether ground 3 is procedurally defaulted is deferred to the merits adjudication.

   d. **Cognizability (state law claims)**

A state prisoner is entitled to federal habeas relief only if he is being held in custody in violation of the constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). Alleged errors in the interpretation or application of state law do not warrant habeas relief. Hubbart v. Knapp, 379 F.3d 773, 779-80 (9th Cir. 2004); see also Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990) ("noting that [the federal court] ha[s] no authority to review a state's application of its own laws").

**The court declines to dismiss grounds 5 and 6**

In ground 5 Randolph argues that the trial court denied him the opportunity to present his defense when it refused his proposed jury instruction in violation of his Fifth, Sixth, and Fourteenth Amendment due process rights. (ECF No. 24 at 14-16). In ground 6 he asserts that he was denied his right to confrontation in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (Id. at 16-17). Respondents argue that these are purely state-law claims. Randolph argues that these alleged trial court errors rose to the level of constitutional violations. The court defers a decision on whether grounds 5 and 6 implicate his constitutional rights or are state-law claims that are not reviewable by this court to the merits stage.

**Ground 7 is dismissed**

Finally, Randolph claims that the trial court violated his Eighth Amendment right to be free from cruel and unusual punishment when it failed to strike the notice of intent to seek the death penalty. (ECF No. 24 at 17-20.) Respondents argue that this claim is moot because after the guilty verdict the State and Randolph stipulated to taking the death penalty off the table in exchange for Randolph agreeing to be sentenced by the court. (Exh. 166.) This court views the claim not as moot but as failing to state a claim for which relief may be granted. Before this claim was ever asserted the State had agreed not to seek the death penalty. The court dismisses ground 7 for failure to state a claim.

**III.     Conclusion**

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 62) is **GRANTED in part and DENIED in part:**

All grounds are **EXHAUSTED**;

A decision on whether ground 3 is procedurally defaulted is deferred;

Ground 7 is **DISMISSED** for failure to state a claim for which relief may be granted.

**IT IS FURTHER ORDERED** that respondents file an answer to the remaining ground in the petition within 60 days of the date of this order.

**IT IS FURTHER ORDERED** that petitioner file a reply in support of the petition within 45 days of the date of service of the answer.

DATED: 17 March 2023.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE